UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| EDMUND RANCOURT and | ) Case No. 6:11-bk-08097-KSJ |
| RACHEL MCGRATH, | ) Chapter 7 |
| | ) |
| Debtors. | ) |
| | ) |
| | |
| J. SCHOENHERR CONSTRUCTION | ) |
| COMPANY, INC., | ) |
| | ) |
| Plaintiff, | ) Adversary No. 6:11-ap-00233-KSJ |
| vs. | ) |
| | ) |
| EDMUND R. RANCOURT and | ) |
| RACHEL MCGRATH a/k/a | ) |
| RACHEL MCGRATH RANCOURT, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Debtors/Defendants, Edmund and Rachel Rancourt, hired their friend's construction company, J. Schoenherr Construction Company, Inc. ("Schoenherr") to remodel their home. Defendants, who were successful real estate agents prior to the collapse of the market in 2007, were unable to fully pay Schoenherr for the work. Schoenherr eventually sued and received a judgment against the Defendants on the debt. Schoenherr now seeks denial of the Defendants' discharge based on various counts asserted under § 727 of the Bankruptcy Code[1]: §§

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. § 101 *et. seq.*

727(a)(2)(A), 727(a)(3), 727(a)(4), and 727(a)(5).[2] Because Schoenherr failed to prove any of the § 727 counts by a preponderance of the evidence, the Court finds no basis for denial of the Defendants' discharge.[3]

Defendants both earn their living selling real estate and, until recently, were very successful. However, like many individuals employed in the real estate industry, their fortune took a turn for the worse when the market collapsed around 2007. Defendants were invested in several multi-million dollar real estate ventures that all failed, and, as a result, they lost millions of dollars. Before the economic downturn, the Defendants lived a relatively lavish lifestyle—they owned expensive cars, jewelry, artwork, and collectables.

Defendants were social friends of the owner of Schoenherr. They hired the construction company to perform a $1 million renovation project on their 5,000 square-foot home in 2005. The renovations were completed in 2007, and, although the Defendants paid nearly the entire $1 million owed, they were unable to pay the entire balance after the real estate market crashed. Schoenherr ultimately sued the Rancourts in state court and received a judgment against them for $193,751.82 in March 2011. Due to the judgment and numerous other rapidly accruing unpaid debts, the Defendants sought relief under Chapter 7 of the Bankruptcy Code on May 27, 2011. Schoenherr now seeks denial of the Debtors' discharge under various § 727 counts.

Many of the Defendants' most valuable assets served as collateral for large business loans taken out to fund their real estate ventures. The evidence showed that Mr. Rancourt took out loans between 2005 and 2007 from Bankers Credit Corporation, which all were secured by

---

[2] The Court previously dismissed Count I of the complaint asserted under § 523(a)(6). Doc. No. 23.
[3] Plaintiff failed to comply with the Court order requiring the parties to exchange exhibits before trial. As a result, the Court granted the Defendants' motion for sanctions and prohibited the Plaintiff from using any exhibits during trial. Doc. No. 55. Further, the Plaintiff did not submit post-trial memoranda as requested by the Court and did not reply to the memorandum submitted by the Defendant (Doc. No. 57). Because the parties did not present oral arguments, the Plaintiff essentially failed to offer any legal argument to advance its case.

the Defendants' real estate holdings and personal property. After the Defendants could no longer pay these loans, Bankers Credit Corporation foreclosed on the real estate and liquidated the personal property, including a Bentley, a Corvette, and a valuable coin collection.[4] The repossession and liquidation took place during 2008 and 2009, and the proceeds were applied to the loan due to Bankers Credit Corporation. The Court specifically finds that the vast majority of the Defendants assets were legitimately lost to secured creditors years prior to the filing of the bankruptcy case.

Schoenherr's claims focus mostly on the Defendants' disposition of other assets – artwork and jewelry including valuable watches and Mrs. Rancourt's diamond engagement ring. In 2007, Mr. Rancourt borrowed $100,000 from a friend, Ben Babazadeh, in an attempt to stay current on some of his obligations. Indeed, the Court notes that the Defendants used $20,000 of these monies to pay Schoenherr. Mr. Rancourt executed a promissory note (the "Babazadeh Note"), under which the Defendants pledged certain personal property to secure repayment.[5] Among the items pledged were watches and jewelry, listed in Exhibit A to the Babazadeh Note.[6] All items listed in Exhibit A were turned over to the lender at the time the note was executed in 2007.[7] Exhibit A also references an Exhibit B, which lists different pieces of artwork, and indicates the Defendants were allowed to retain possession of this artwork.[8] The Defendants in fact retained possession of the artwork until the Defendants defaulted on the Babazadah Note and, in 2009, Mr. Babazadah then repossessed it to satisfy the Defendants' remaining obligations on the loan, again over one year before this bankruptcy case was filed.

---

[4] *See* Defendants' Exhibit 9 (showing repossession of Mr. Rancourt's coin collection).
[5] Defendants' Exhibit 7.
[6] *Id.*, at Ex. A.
[7] *Id.*
[8] *Id.*

Mrs. Rancourt's diamond engagement ring and some remaining jewelry, however, were not specifically collateralized under the Babazadeh Note. Mrs. Rancourt sold her diamond engagement ring to a patron at a pawnshop in California for $1,000 cash in early 2009, more than two years before the bankruptcy filing, after she could not find a pawnshop willing to purchase it. Mrs. Rancourt also sold some other jewelry to LaBosco Jewelry and Pawn Castle between April 2008 and October 2009 in an attempt to stay current on the family bills.[9] Schoenherr did not put on any evidence to suggest these sales were made with fraudulent intent or for less than reasonable value. In fact, it appears Mrs. Rancourt sold all this jewelry in an attempt to satisfy her obligations, not evade them.

Schoenherr's principals, Mr. and Mrs. Schoenherr, testified that they saw Mrs. Rancourt wearing a diamond ring like the one she claimed to have sold at a Christmas party in 2011. This testimony was adequately refuted. Mrs. Rancourt owns quite a bit of fake jewelry, including a cubic zirconia ring substantially similar to her old engagement ring. She testified that she was wearing her fake ring at the Christmas party.

Another of Schoenherr's claims relates to liens on the Defendants' cars. Mr. Rancourt granted a lien on his 2004 Ford Expedition to Mr. Hedner, his attorney prior to bankruptcy, to secure payment for legal work already performed. The evidence was inconclusive as to exactly when Mr. Rancourt granted the lien, but the Court finds that any failure to list it in his Statement of Financial Affairs ("SoFA") was inadvertent. The Defendants listed the asset as encumbered on Schedule B, Mr. Hedner was listed as a secured creditor in Schedule D, and the value of the car did not exceed what he owed Mr. Hedner.[10]

---

[9] Defendants' Exhibit 8.
[10] *See* Main Case No. 6:11-bk-08097-KSJ, Doc. No. 1.

Mrs. Rancourt, similarly, granted a lien to her sister on her 2001 Mercedes in her SoFA, within two years prior to filing for bankruptcy. She admittedly did not list this as a transfer on her SoFA. But, like lien on the Ford, the Defendants listed the asset on Schedule B, and her sister was listed as a secured creditor on Schedule D.[11] The Court finds the Defendants' failure to list the two liens as transfers on their SoFA was inadvertent and not done with fraudulent intent.

The Court finds the testimony of both Defendants credible. They wanted to pay their bills. They liquidated all of their assets and used the monies to pay creditors. They did not secrete monies for themselves.

Schoenherr now seeks denial of the Defendants' discharge under §§ 727(a)(2)(A), 727(a)(3), 727(a)(4), and 727(a)(5) of the Bankruptcy Code. The primary purpose of bankruptcy law is to provide an honest debtor with a fresh start by relieving the burden of indebtedness.[12] Generally, objections to discharge should be construed liberally in favor of the debtor and strictly against the objecting party.[13] However, this general policy applies only to the honest debtor.[14] "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."[15] The objecting party must prove the objection by a preponderance of the evidence.[16] Accordingly, Schoenherr bears the burden of proving the Defendants are not entitled to receive a discharge by a preponderance of the evidence under each count asserted in its complaint.

---

[11] *See Id.*
[12] *Perez v. Campbell*, 402 U.S. 637, 91 S. Ct. 1704, 29 L. Ed. 2d 233 (1971).
[13] *In re Trafford*, 377 B.R. 387, 392 (Bankr. M.D. Fla. 2007). *See also In re Coady*, 588 F.3d 1312, 1315 (11th Cir. 2009).
[14] *Coady*, 588 F.3d at 1315 (citing *In re Jennings*, 533 F.3d 1333, 1338-39 (11th Cir. 2008)).
[15] Fed. R. Bankr. P. 4005.
[16] *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

*11 U.S.C. § 727(a)(2)*
*Transfers with intent to hinder, delay, or defraud creditor*

Schoenherr's first count is based on § 727(a)(2)(A) of the Bankruptcy Code, which provides, in pertinent part:

> The court shall grant the debtor a discharge, unless . . . the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition . . . .[17]

To warrant denial of discharge under § 727(a)(2)(A), a plaintiff must show: "(1) that the act complained of was done within one year prior to the date the petition was filed, (2) with actual intent to hinder, delay, or defraud a creditor, (3) that the act was that of the debtor, and (4) that the act consisted on transferring, removing, destroying, or concealing any of the debtor's property."[18]

The only transfer Schoenherr proved occurred within one year before the bankruptcy filing was Mrs. Rancourt's granting of a $6,000 lien on her car to her sister. Mrs. Rancourt listed the lien on her Schedule D and identified her sister as the party to whom the lien was granted.[19] Schoenherr put on no evidence, other than the failure to list the transfer on the parties' SoFA, to indicate that the lien was given with fraudulent intent. Granted, the lienholder is Mrs. Rancourt's sister, but she was identified on the Schedules and gave undisputed value in return for the lien. Defendants did not act with intent to hinder, delay, or defraud a creditor in granting the lien.

---

[17] 11 U.S.C. § 727(a)(2)(A).
[18] *In re Jennings*, 533 F.3d 1333, 1339 (11th Cir. 2008).
[19] *See* Main Case No. 6:11-bk-08097-KSJ, Doc. No. 1.

## *11 U.S.C. § 727(a)(3)*
### *Failure to preserve records*

Schoenherr's second count is based on § 727(a)(3) of the Bankruptcy Code, which provides:

> The court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.[20]

To make a prima facie case under § 727(a)(3), a creditor must prove "(1) either that the debtor failed to keep or preserve any recorded information, or that he destroyed, mutilated, falsified, or concealed recorded information, and (2) that it is impossible to ascertain the financial condition of the debtor as a result of the debtor's conduct."[21] If moving under the "failed to keep or preserve any recorded information" prong, the creditor first must make a showing of inadequate or nonexistent records; then, "the burden of proof shifts to the debtors to justify the inadequacy or nonexistence of the records."[22] Courts have wide discretion to determine whether a debtor has maintained sufficient records.[23] The focus of § 727(a)(3) is "on the debtor's presentation of an accurate and complete account of his financial affairs."[24]

In his complaint, Schoenherr only loosely mentions records pertaining to the Defendants' "transfers of jewelry, art work, loans from family members and liens granted to insiders."[25] Mr. Rancourt testified that, throughout the pendency of this case, Schoenherr never identified or requested production of specific records it claims were missing. At trial, Schoenherr did not

---

[20] 11 U.S.C. § 727(a)(3).
[21] *In re Fasolak*, 381 B.R. 781, 790 (Bankr. M.D. Fla. 2007) (quoting *In re Floyd*, 322 B.R. 205, 213 (Bankr. M.D. Fla. 2003)).
[22] *In re Canava*, 550 F.3d 755, 761 (7th Cir. 2008).
[23] *In re Shahid*, 334 B.R. 698 , 706 (Bankr. N.D. Fla. 2005) (citing *In re Leffingwell*, 279 B.R. 328, 355 (Bankr. M.D. Fla. 2002)).
[24] *Fasolak*, 381 B.R. at 790 (citing *In re Herbert*, 304 B.R. 67, 75 (Bankr. E.D.N.Y. 2004)).
[25] Plaintiff's Complaint, Doc. No. 1 at π 19.

specifically identify which documents or records Schoenherr failed to maintain. The burden never shifted to Schoenherr. As such, Schoenherr failed to establish that the Debtor failed to keep or preserve any specific recorded information as contemplated by § 727(a)(3) of the Bankruptcy Code.

## *11 U.S.C. § 727(a)(4)(A)*
## *False oath or account*

Schoenherr's third count is based on § 727(a)(4)(A) of the Bankruptcy Code, that allows for denial of a debtor's discharge where the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."[26] "The entire thrust of an objection to discharge because of a false oath or account is to prevent knowing fraud or perjury in the bankruptcy case. As a result, the objection should not apply to minor errors."[27] To warrant denial of discharge based on a debtor's false oath or account, the objecting party must prove the false oath or account was (1) fraudulently made and (2) related to material fact.[28] Fraudulent intent can be inferred from examining the totality of circumstances surrounding the debtors' bankruptcy case.[29] A fact is "'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."[30]

The basis of Schoenherr's allegations of false oaths or accounts relate to alleged misstatements and omissions made by the Defendants in their SoFA, which is signed under oath. The Court will address the alleged misstatements in turn.

---

[26] 11 U.S.C. 727(a)(4)(A).
[27] *In re Dupree*, 336 B.R. 490, 494 (Bankr. M.D. Fla. 2005) (citing *In re Wills*, 243 B.R. 58, 63 (9th Cir. BAP 1999)).
[28] *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991); *In re Ingersoll*, 124 B.R. 116, 122 (M.D. Fla. 1991).
[29] *In re Khanani*, 374 B.R. 878, 888 (Bankr. M.D. Fla. 2005) (citing *Haught v. U.S.*, 242 B.R. 522, 525 (M.D. Fla. 1999)); *Ingersoll*, 124 B.R. at 122.
[30] *Chalik v. Moorfield (In re Chalik)*, 784 B.R. 616, 618 (11th Cir. 1984).

Schoenherr first alleges the Defendants failed to list in their SoFA Mr. Babazadeh's repossession of artwork in late 2009. Schoenherr characterized this as a transfer, but Mr. Rancourt's testimony, in conjunction with the promissory note granted to Mr. Babazadeh, showed that this in actuality a repossession of collateral securing the repayment of the Babazadeh note. Schoenherr advanced no legal argument to show otherwise.[31] Number 5 on the SoFA requires debtors to list repossessions that occurred within *one year* prior to the filing of the petition.[32] Mr. Rancourt's unrefuted testimony showed that the repossession of the artwork occurred in late 2009, over one year before the filing on May 27, 2011. Defendants made no false oath in failing to list the repossession of artwork.

Similarly, the Defendants did not make a false oath or account in failing to list the lien given to Mr. Hedner on the 2004 Ford Expedition. Section 10 of the SoFA requires debtors to identify transfers that occurred within two years prior to the bankruptcy filing.[33] The testimony was not conclusive as to when Mr. Rancourt granted the lien to Mr. Hedner. The burden of proof is on Schoenherr, and he did prove that the lien was granted within two years prior to the Defendants' bankruptcy filing. Further, the Defendants listed Mr. Hedner as a lien holder in Schedule D, negating any possible intent to hide the lien or make a false oath.

Schoenherr also alleged the Defendants made a false oath by indicating their intent to surrender their homestead in their Statement of Intentions. Schoenherr argues this was a false oath because the Defendants never *actually* surrendered the homestead because they still reside in the house. This argument wholly lacks merit. The home is encumbered by at least eight different and substantial liens. At this point, none of the lienholders have completed a foreclosure of the home. During this limbo period, the Defendants have stayed in the house to

---

[31] The Plaintiff was directed to file post-trial memoranda, but failed to do so.
[32] *See* Main Case No. 6:11-bk-08097-KSJ, Doc. No. 1.
[33] *See* Main Case No. 6:11-bk-08097-KSJ, Doc. No. 1.

further assist them in getting this fresh financial start. Schoenherr advanced no legal arguments as to how the Defendants were expected to otherwise fulfil the surrender of the home to eight different creditors. Defendants did not make a false oath by stating their intention to surrender their homestead. They simply cannot pay the mortgage encumbering their home and are legally surrendering their interest in the home. The problem at this point is that none of the lienholders want the house back.

Schoenherr next alleges the Defendants made a false oath when they did not list a real estate commission of about $24,000 due to Mr. Rancourt on his Schedules. Mr. Rancourt testified that the real estate commission was not considered an "account payable" because the closing for which that commission was earned did not occur until *after* the petition was filed. Defendants argue that the commission, therefore, should be deemed received post-petition, and thus not property of the estate. The Chapter 7 Trustee charged with collecting assets has not sought to administer these funds. Schoenherr did not present any evidence or argument to refute the Defendants' position that the monies are not property of their bankruptcy estate. Defendants did not make a false oath in failing to list Mr. Rancourt's commission on their schedules.

The only allegation of a false oath that appears to have any traction is Mrs. Rancourt's granting of the $6,000 lien to her sister within the year before filing the bankruptcy petition. This is a transfer that indeed should have been listed on the Defendants' SoFA. But the Court finds that the Defendants' failure to list the granting of lien was an innocent mistake and not done with any fraudulent intent. The car and the lien were listed in the Defendants' schedules, along with the name of the lienholder.[34] The Defendants were not trying to conceal the lien or identity of the lienholder. They listed the information twice on their Schedules and innocently

---

[34] *See* Main Case No. 6:11-bk-08097-KSJ, Doc. No. 1, Schedules B and D.

forgot to add it a third time on their Statement of Financial Affairs. Moreover, the omission was not material. The Defendants have over $12 million in liabilities. A $6,000 lien is not material enough to warrant wholesale denial of the Defendants' discharge.

Schoenherr failed to prove that the Defendants made any material false oaths or accounts with any fraudulent intent as required by § 727(a)(4)(A) of the Bankruptcy Code.

*11 U.S.C. § 727(a)(5)*
*Failure to explain loss or deficiency of assets*

Lastly, Schoenherr seeks denial of the Defendants' discharge through § 727(a)(5) that requires a plaintiff to prove: (1) at a time not too remote from the commencement of the case, the debtor owned a substantial, identifiable asset; (2) that on the date of filing the bankruptcy petition, the debtor no longer owned the particular asset; and (3) that the debtor was unable to satisfactorily explain the non-existence of the asset when called upon to do so.[35] "If the party objecting to the discharge establishes the basis for its objection, then the burden shifts to the debtor to 'explain satisfactorily the loss.'"[36] A satisfactory explanation is one that convinces the judge.[37]

Schoenherr failed to meet its burden with respect to most assets identified. First, many of the assets Schoenherr identified were owned too remote from the commencement of the case to shift the burden to the Defendants. These assets (the real estate, the Bentley, the Corvette, and the coin collection) were repossessed as a part of a security agreement with Bankers Credit in 2006. Five years prior to bankruptcy is too remote, and, in any event, the Debtor furnished a satisfactory explanation for the non-existence of the asset.

---

[35] *In re Walden*, 380 B.R. 883, 894 (Bankr. M.D. Fla. 2008).
[36] *In re Fasolak*, 381 B.R. 781, 792 (Bankr. M.D. Fla. 2007) (citing *In re Hawley*, 51 F.3d 246, 249 (11th Cir. 1995)).
[37] *Chalik v. Moorfield (In re Chalik)*, 784 B.R. 616, 619 (11th Cir. 1984).

With respect to the rest of the assets identified by Schoenherr, the Defendants furnished satisfactory explanations as to why they no longer owned them. Mrs. Rancourt sold her diamond ring for $1,000 cash in 2008 or 2009, more than two years prior to the bankruptcy filing, replacing it with a fake diamond ring. The rest of the jewelry Schoenherr identified was turned over as security for the loan to Mr. Babazadeh in 2007 or sold at a pawnshop. The artwork was repossessed in 2009 under the Babazadeh Note, two years prior to the bankruptcy filing.

The Court finds that Schoenherr failed to prove the elements of its case under § 727(a)(5) and denial of the Defendants' discharge is unwarranted.

In conclusion, although the Defendants admittedly once lived a luxurious lifestyle, they lost most of their valuable assets to creditors in the wake of the real estate market's collapse. They still owe $12 million to creditors they cannot repay. As a result of their bankruptcy filing, many creditors will not be paid in full, including Schoenherr, that is owed a small fraction of the amount due by the Defendants to their creditors. No other creditor or the Chapter 7 Trustee objected to the Defendants' discharge, and, ironically, Plaintiff was one of the very few creditors who received substantial payments on the debt due to it from the Defendants.

Schoenherr has established no basis to deny the Defendants their discharge under any of the counts raised. The Defendants are entitled to a discharge. A separate and final judgment in favor of the Debtors/Defendants and against the Plaintiff consistent with these Findings of Fact and Conclusions of law shall be entered.

DONE AND ORDERED in Orlando, Florida, on February 7, 2014.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

Raymond J. Rotella, Esquire, Attorney for the Defendants, is directed to serve a copy of this Order on interested parties and file a proof of service within 3 days of entry of the Order.